PER CURIAM.
We have for review the complaint of The Florida Bar (“the Bar”) and the referee’s report regarding alleged ethical breaches by Gary A. Poe. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the report.
The referee adopted the following findings of fact from the Bar’s complaint:
3. In 1986 the respondent represented Randall E. Bergeron, Sr. on criminal charges. To secure payment of the respondent’s attorney’s fees Mr. Bergeron and his wife, Linda, executed a second mortgage on their home in favor of the respondent.
4. On June 16, 1988, a final judgment of dissolution of marriage was entered dissolving the marriage of Linda L. Bergeron and Randall E. Bergeron, Sr., and an amended final judgment was entered on April 13, 1989.
5. Pursuant to the final judgments and the property settlement agreement incorporated therein, Mrs. Bergeron assumed sole responsibility for the first mortgage on the marital home. Additionally, Mrs. Bergeron was solely responsible for paying the second mortgage held by the respondent as well as other debts to Mr. Berger-on that had been incurred during the marriage.
6. As a result of the final judgment, Randall Bergeron was to pay $60.00 per week in child support and an additional $50.00 per month for 100 months “as and for child support.” There were no other written documents modifying or altering Mr. Bergeron’s child support obligations.
*702 7. On or about April 10, 1990, Mrs. Bergeron filed for bankruptcy under Chapter 7 of the Bankruptcy code. Because she had obligations to Mr. Bergeron as a result of the divorce and to the respondent with respect to the second mortgage on the marital home, Mrs. Bergeron listed her former husband and the respondent as creditors in the bankruptcy action.
8. During the pendency of the bankruptcy proceedings, Mrs. Bergeron relinquished the marital home and her interest therein and the respondent’s second mortgage was foreclosed upon by the first mortgage holder. Mrs. Bergeron was granted a discharge by the bankruptcy court on August 6, 1990.
9. Both Mr. Bergeron and the respondent received notice of the bankruptcy proceedings and the discharge. At that time, neither Mr. Bergeron nor the respondent filed for an adversary proceeding to determine if the debts owed to them by Mrs. Bergeron were dischargeable nor did they otherwise object to the discharge of the debts Mrs. Bergeron owed to them.
10. On or about December 17, 1992, Mrs. Bergeron was served with a petition to modify the final judgment in the dissolution of marriage case. The petition was signed by the respondent as the attorney for Mr. Bergeron.
12. The respondent’s petition further alleged that Mrs. Bergeron and her former husband had verbally agreed that the additional $50.00 monthly payments were not to be used for child support but were to be paid to the respondent towards the debt owed on the second mortgage he held. The petition alleged that Mrs. Bergeron had collected the monthly payments but had not paid the respondent.
13. Mr. Bergeron was seeking a modification of the child support ordered so that the $50.00 monthly payments could be paid directly to the respondent and he was also seeking damages against Mrs. Bergeron. Mr. Bergeron claimed his former wife had breached their agreement to pay the respondent the $50.00 monthly payments and therefore, he was still indebted to the respondent.
15. Mrs. Bergeron, through her attorney, filed a motion to dismiss the respondent’s petition on January 6, 1993. The grounds for the motion were that Mrs. Bergeron had been granted a discharge by the bankruptcy court; that Mr. Bergeron and the respondent had received notice of the discharge; that the allegations in then-petition pertained to debts that had been discharged; and that Mr. Bergeron and the respondent were attempting to undermine Mrs. Bergeron’s discharge in bankruptcy.
17. On February 26, 1993, the circuit court dismissed the [relevant portion of the petition]....
18. On or about January 24, 1994, a hearing was held in the United States Bankruptcy Court.... On February 22, 1994, the bankruptcy court issued its finding of fact and conclusions of law concerning this matter and an order granting a motion for sanctions against the respondent and Mr. Bergeron.
19. The court found that the debts the respondent and Mr. Bergeron were attempting to collect had been discharged in Mrs. Bergeron’s bankruptcy case, of which Mr. Bergeron and the respondent had received appropriate notice, and that they had not attempted to find an exception to the discharge of the debts or filed an adversary proceeding.
20. In ordering sanctions against Mr. Bergeron and the respondent, the bankruptcy court found that their commencement and continuation of state court proceedings to collect debts that had been discharged was a willful and intentional violation of the bankruptcy code. They were ordered to pay to Mrs. Bergeron $850.00 in costs she expended in defending the action they had filed and $900.00 for Mrs. Bergeron’s attorney fees.
In addition to the findings adopted from the Bar’s complaint, the referee made supplemental findings:
*703 1. While Mrs. Bergeron had been “discharged” from the debt by virtue of the order of the Bankruptcy Court, the Respondent herein had a duty to attend to the interests of his client, Mr. Bergeron;
2. The Circuit Court of the State of Florida maintained “concurrent” jurisdiction with the Bankruptcy Court, and certainly the Circuit Court was the appropriate forum, for matters of “child support” once the bankruptcy action had terminated;
3. Under Florida law the Circuit Court has jurisdiction to modify “child support” during the minority of the children in the event of determination of a sufficient change in circumstance relative to “need” and/or “ability to pay”;
4. Even though the Circuit Court rejected respondent’s supplemental action for relief regarding the alleged “double payment” by Mr. Bergeron, it was reasonable and not necessarily ill-advised of the Respondent, on behalf of Mr. Bergeron, to seek to modify “child support” payments;
After all, there was a.) some evidence that the “child support” was intended to go toward payment on a mortgage against the family dwelling (which provided shelter of the minor child) and b.) there had been a “change in circumstances” regarding both “need” and “ability to pay” since Mrs. Ber-geron was no longer accountable for the mortgage payment (by virtue of the discharge in bankruptcy) and Mr. Bergeron was now called upon to make the payment previously required of Mrs. Bergeron.
5. Respondent’s testimony contends that he was attempting to represent the interest of his client and not necessarily his own personal interest (since he was receiving the note payments from his client);
6. Respondent’s action was endorsed by an expert bankruptcy attorney and Respondent further testified to consultation with one or more attorneys prior to pursuing the legal course ultimately taken;
7. The evidence is insufficient to sustain a disciplinary decision against the Respondent.
The referee recommends that Poe be found not guilty of committing ethical violations.
The Bar accepts the first twenty findings of fact but contests the supplemental findings. The Bar contends that the supplemental findings are erroneous and unsupported by the evidence and that the referee’s conclusions ignore the order of the bankruptcy court imposing sanctions. We disagree.
When challenging a referee’s findings or conclusions, the challenger must show that no record evidence supports the findings or that the evidence clearly contradicts the conclusions:
A referee’s findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. If the referee’s findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. The party contending that the referee’s findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994) (citations omitted).
Poe’s position can be summarized thusly: Mr. and Mrs. Bergeron had verbally agreed at the time of their dissolution that the supplemental $50.00 monthly payment was to be used by Mrs. Bergeron not for “child support” per se but to ensure that Mr. Bergeron would satisfy his debt to Poe (via payments through Mrs. Bergeron) so that Poe would not foreclose on the children’s home. Once the second mortgage was discharged in bankruptcy, Poe contends, there was no further need for this supplemental “child support” and additionally, although Mr. Bergeron had been making payments to Mrs. Bergeron, she had not been paying Poe each month.
The petition submitted by Poe sought to modify the settlement agreement in three ways: 1) Mr. Bergeron would make the monthly payments to Poe himself instead of *704 through Mrs. Bergeron; 2) Mrs. Bergeron would be required to refund the money she had kept; and 3) Mr. Bergeron could offset against future child support payments any amount Mrs. Bergeron did not refund. Poe was acting on his client’s behalf, he claims, not his own, in filing the petition since Mr. Bergeron would remain accountable to Poe for the fee regardless of the outcome of the petition.
As noted above, the referee concluded that Poe’s action in filing the petition was reasonable: “[I]t was reasonable and not necessarily ill-advised for the Respondent, on behalf of Mr. Bergeron, to seek to modify ‘child support’ payments.” The record supports this conclusion.
The record contains a letter from Mrs. Bergeron’s lawyer to Mr. Bergeron’s lawyer which clearly states that the $50.00 supplemental payment was intended to go towards the Poe lien, not “child support” per se:
... In any event, we are prepared to settle this case on the following basis:
1. Mrs. Bergeron to have the primary custodial care of the two minor children subject to visitation by the husband (we can work out the details of that later);
3. Mrs. Bergeron to receive the exclusive use, possession, right, and title to the marital residence, and also assume the lien to Gary Poe (this will be tied in with number four next below);
4. Mr. Bergeron to pay $60.00 per week child support plus an additional $50.00 per month for one hundred months as his payment towards the Poe lien, however we will specifically assume responsibility for paying off the lien with the transfer of the house;
5. Mrs. Bergeron to receive the dog, wheelbarrow, one post hole digger, rakes and shovels, rack, and paint as well as all household furnishings, and Mr. Bergeron to receive all other tools in the bam area, and the boat....
Under this scenario, just as Poe claims, once Mrs. Bergeron had been discharged from liability for the lien there would have been no further need for this monthly payment. As noted by the referee, Poe’s action in seeking to modify the settlement agreement was endorsed by an expert bankruptcy lawyer and other attorneys in the field. Mr. Bergeron himself indicated that he would remain accountable to Poe for the attorney’s fees regardless of the discharge of the lien or the outcome of the petition.
We disagree with the Bar’s claim that because Poe was sanctioned in federal bankruptcy court he must have violated the Bar’s disciplinary rules. The sanction is minor: Poe and Mr. Bergeron must pay Mrs. Ber-geron’s fees and costs in defending against the petition. Courts commonly award fees and costs in actions arising from a dissolution of marriage,[1] but this does not mean that the other party is automatically guilty of committing ethical violations.
Based on the foregoing, we approve the referee’s findings of fact and recommendation that Poe be found not guilty of ethical violations. We impose no discipline and approve the referee’s recommendation that the costs the Bar incurred in this proceeding not be assessed against Poe.
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
GRIMES, C.J., dissents with an opinion.

. See § 61.16, Fla.Stat. (1993) ("The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including ... modification proceedings.").